IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KEILER LEDESMA, etc.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0419-WS-B |
| | ) |
| **ROBERT J. PHILLIPS, etc., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This recently removed action is before the Court on its *sua sponte* review of its subject matter jurisdiction.[1]  Upon initial review, the Court concluded that the defendants[2] had failed to demonstrate by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. (Doc. 8).[3]  The Court extended the defendants an opportunity to present supplemental

---

[1] "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue," it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

[2] As the party seeking a federal forum, the defendants bear the burden of demonstrating both that the parties are of diverse citizenship and that the amount in controversy exceeds the jurisdictional threshold. *E.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008); *accord Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

[3] "[W]here jurisdiction is based on a claim for indeterminate damages, ... the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). "[A] removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted); *accord* 28 U.S.C. § 1446(c)(2)(B).  A defendant may demonstrate that the amount in controversy is facially

briefing and/or evidentiary materials on the jurisdictional issue, and they have done so. (Doc. 9). After careful consideration, the Court concludes that the defendants have not satisfied their burden and this action therefore must be remanded for want of subject matter jurisdiction.

According to the complaint, (Doc. 1-3 at 3-18), the plaintiff was driving his vehicle south on Interstate 65 when the individual defendant (operating a tractor trailer and acting within the line and scope of his employment by (or agency for) the corporate defendant) changed lanes, striking the plaintiff's vehicle and causing it to land against the center median. The complaint asserts claims for negligence/wantonness, negligent/wanton entrustment, respondeat superior, and negligent/wanton hiring, training, and supervision.

The complaint alleges that the plaintiff experienced physical injuries in the form of an annular bulge in his lumbar spine, neck pain, and other, unidentified injuries. Under each count, the plaintiff seeks an award for physical injury, pain and suffering, medical expenses, out-of-pocket expenses, lost income, property damage and loss, loss of enjoyment of life, inconvenience, and emotional distress, plus punitive damages under the wantonness prongs of his claims. The complaint does not demand a sum certain but only such damages as are determined by a jury.

### A. Property Damage.

The defendants have presented evidence that the plaintiff's insurer totaled his vehicle and that its pre-incident actual cash value was $20,722. (Doc. 1-10 at 2). Long before this action was filed, the plaintiff and his insurer settled the property damage for an unknown amount. (Doc. 1-9 at 2). The defendants say it does not matter how much

---

apparent from the complaint itself, or it may offer evidence beyond the pleading to meet its burden. *Roe*, 613 F.3d at 1061. A court may review the allegations of the complaint through the filter of "judicial experience and common sense," *id*. at 1062, but it "cannot speculate or hypothesize about facts that are not in the record." *Fox v. Ritz-Carlton Hotel Company, L.L.C.*, 977 F.3d 1039, 1048 (11th Cir. 2020).

2

the plaintiff received from his insurer because, under Alabama law, an insured can recover from a tortfeasor the full pre-incident value of his totaled vehicle, not just the difference between that value and what the insured received in insurance benefits. (Doc. 1 at 7-8). However, and as the Court pointed out in its previous order, when the insurer "ma[kes] a payment to fully compensate the owner for her damaged automobile pursuant to the terms of its policy (less the applicable … deductible)," and when "[t]hat policy expressly provides that when the insurer makes a payment to or on behalf of a person with respect to a covered loss and that person also has rights of recovery from another with respect to that same loss, those rights are transferred to the insurer," the insurer's payment "divest[s] the owner of any right she might have had to recover damages from the driver and ma[kes] the insurer the 'real party in interest' under Rule 17(a) …." *Broadnax v. Griswold*, 17 So. 3d 656, 659 (Ala. Civ. App. 2008).

The defendants insist the Court must accept that the full $20,722 is in controversy because it is presently unresolved whether the plaintiff's policy is of the type described in *Broadnax*. (Doc. 9 at 8-10). For this proposition, the defendants rely on cases stating that a claimed element of damages must be considered when it is *legally* unresolved, under state law, whether recovery of such damages is permitted. These cases are inapposite, because *Broadnax* has already established the *legal* parameters of when a plaintiff may recover from a tortfeasor damages for a totaled vehicle as to which the plaintiff has already been fully compensated by his insurer; the open question is only the *factual* one of whether the plaintiff's policy is of that type. Although invited to do so, (Doc. 8 at 4), the defendants have offered the Court no non-speculative means of predicting the answer to that factual question; on the contrary, they assert weakly only that the plaintiff's policy language "may be" different from that in *Broadnax*. (*Id*. at 9).

Ultimately, the Court need not decide whether it may or should consider the pre-incident value of the totaled vehicle as part of the amount in controversy; even if that value is included, the defendants have not carried their jurisdictional burden.

3

### B. Personal Injury.

The defendants have submitted evidence that there is a hospital lien for $7,364.35, and there are indications that the plaintiff's medical bills may be higher, based on physical therapy ongoing as of October 2024 (eight months after the incident). (Doc. 1 at 7-8; Docs. 1-8, 1-9). However, the defendants' evidence is ambiguous as to whether the cost of physical therapy is included in this figure. Even if it is not, the defendants have presented the Court no non-speculative means of estimating the magnitude of such expense. The Court pointed out these issues in its prior order, (Doc. 8 at 2-3), but the defendants have not addressed them. Instead, they invite the Court to conclude that the jurisdictional amount is in controversy due to the "severity of the crash" and the plaintiff's "alleged injuries sustained therefrom." (Doc. 9 at 3).

As to the severity of the crash, the defendants focus on the vehicles' speed, the verbs employed, and the damage to the plaintiff's vehicle. According to the complaint and crash report, while both vehicles were traveling southbound on Interstate 65 at approximately 65 miles per hour, the defendants' vehicle changed lanes, resulting in "striking" the plaintiff's vehicle, causing the plaintiff to "los[e] control of his vehicle[,] sp[i]n around" the defendants' vehicle, and "hit" the retaining wall. (Doc. 1-3 at 4; Doc. 1-6 at 2-4). As noted in Part A, the plaintiff's vehicle was totaled.

The defendants suggest that the complaint and crash report indicate that their vehicle struck the plaintiff's vehicle at 65 mph. (Doc. 9 at 4). Since both vehicles were traveling in the same direction at about the same speed, it is not merely unlikely but impossible that their contact occurred at anything near a net speed of 65 mph. The defendants similarly suggest that the plaintiff's vehicle hit the retaining wall at 65 mph. (*Id.*). Though not theoretically impossible, the lapse of time and the application of friction before the incident ended (even if the plaintiff did not apply his brakes) make it highly unlikely that he struck the median at or near 65 mph; the defendants' suggestion to the contrary is not the product of common sense but of speculation. The totaling of the plaintiff's vehicle is a given, but it cannot on its own demonstrate grievous personal injury, as (thankfully) motorists every day walk away unscathed from high-speed

4

collisions. Moreover, the defendants have submitted a post-accident photograph of the plaintiff's vehicle, which shows significant exterior damage to the driver side but no shattered glass or other intrusion into the passenger compartment. (Doc. 1-7 at 2).

In any event, the amount in controversy for personal injury does not depend on how scary the incident sounds, or on how awful the plaintiff's vehicle looks afterwards, but on how badly the plaintiff was (not, might have been) injured. The only actual injury the defendants can identify is an annular bulge in the plaintiff's lumbar spine, as to which they offer no definition, description, or typical prognosis, and the only pain they identify is undescribed neck pain. (Doc. 9 at 6). The complaint alleges "permanent physical injury" and "extensive pain and suffering," but neither the pleading nor the defendants supply any non-speculative means of assessing how much these glittering generalities place in controversy. *Cf. Williams v. Best Buy Co.*, 269 F.3d 1316, 1318, 1320 (11th Cir. 2001) (it was not facially apparent that a complaint alleging, inter alia, "permanent physical and mental injuries" placed more than $75,000 in controversy).

The defendants note that the plaintiff was transported from the scene by ambulance to a hospital, (Doc. 9 at 6), but that is a commonplace precaution after such events, and the defendants do not identify what medical treatment the plaintiff received in the immediate, or long-term, aftermath. They do not identify any future contemplated medical treatment and, while they stress that the plaintiff was receiving treatment as recently as October 2024, (*id.*), this consists only of the physical therapy mentioned previously - the frequency, cost, and duration of which the defendants neither know nor offer any non-speculative means of estimating.

The defendants cite *Hickerson v. Enterprise Leasing Co.*, 818 Fed. Appx. 880 (11th Cir. 2020), for the proposition that "[c]omplaints alleging serious, lasting physical injuries are typically removable because it is facially apparent that these claims are worth more than $75,000." *Id*. at 883. In *Hickerson*, this standard was met because the personal injury suffered by one plaintiff included: (1) a traumatic brain injury; (2) a broken forearm, which required surgery; (3) a nasal bone fracture; (4) a rib fracture; and (5) facial lacerations. *Id*. at 884. As noted, all the instant complaint alleges is an annular

bulge, and nothing in *Hickerson* suggests that the mere existence of an annular bulge reflects a serious, lasting injury that places more than $75,000 in controversy.

The defendants argue that the plaintiff additionally seeks damages for "disfigurement," which they say is serious and lasting within the contemplation of *Hickerson*. (Doc. 9 at 7). Although the complaint's statement of facts alleges generally that the plaintiff suffered unidentified disfigurement, (Doc. 1-3 at 6), every listing of the damages for which recovery is sought omits disfigurement as an element. (*Id*. at 9, 12, 14, 16).

Even were the plaintiff seeking recovery for disfigurement, the Court cannot agree that a bland allegation of unidentified "disfigurement" falls within *Hickerson*. *Compare Sanderson v. Daimler Chrysler Motor Corp*., 2007 WL 2988222 at *1-2 (S.D. Ala. 2007) (a complaint that alleged "serious and permanent disfigurement and scarring to [the plaintiff's] face and body" placed over $75,000 in controversy, because it showed the plaintiff "has experienced a shattering loss that few would be willing to share at any price") *with Cowart v. Geico Insurance Co*., 2018 WL 669700 at *3 (S.D. Ala. 2018) (an allegation of undescribed disfigurement, restricted at most to the plaintiff's left leg and ankle, did not make it facially apparent that the jurisdictional threshold was satisfied).

### C.  Punitive Damages.

The defendants initially justified removal by applying a 2:1 or 3:1 ratio of punitive damages to the plaintiffs' supposed hard damages of over $28,000. (Doc. 1 at 8-11). The Court rejected that approach, (Doc. 8 at 4), as it did in *Cote v. Emerald Coast RV Center, LLC*, 2023 WL 2485783 at *2 (S.D. Ala. 2023). The defendants also proposed, based on *McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729 (11th Cir. 2014), that the Court consider all punitive damages that "could" be awarded, up to Alabama's statutory cap of $500,000. (Doc. 1 at 8, 11). The Court declined to do so, (Doc. 8 at 4), for reasons it expressed in *Mosley v. State Farm Fire and Casualty Co*., 2022 WL 2287927 at *3 (S.D. Ala. 2022).

In their supplemental brief, the defendants argue more generally that the Court should consider "the potential for a substantial award of punitive damages." This potential arises, they say, because the complaint seeks punitive damages under all four causes of action and against both defendants, and because they have presented evidence of the severity of the accident and of the plaintiff's injuries. (Doc. 9 at 10-11).

"As this Court has explained, without specific facts to suggest that the defendant's alleged actions were or might have been so egregious or reprehensible to support a substantial punitive damages demand, assigning significant value to such a demand constitutes unvarnished conjecture." *Cote*, 2023 WL 2485783 at *2 (internal quotes omitted). None of the circumstances on which the defendants hang the potential for a substantial award of punitive damages have anything to do with the egregiousness or reprehensibility of their alleged conduct, and they therefore cannot support a non-speculative assessment that a substantial amount of punitive damages is more likely than not in controversy.

### D. Other Damages.

The defendants initially argued that the Court should "aggregate" the laundry list of damages found in the complaint to find the requisite amount in controversy. (Doc. 1 at 11-13). The Court rejected this approach, (Doc. 8 at 5), as inconsistent with *Williams*, which makes clear that "merely listing categories of damage does not satisfy the [removing defendant's] burden." *Robinson v. Clayton*, 2012 WL 6028940 at *2 (S.D. Ala. 2012).

In their supplemental brief, the defendants argue there is a "strong likelihood that further damages will emerge, such as bills for ambulance and towing services, continued medical treatment, and Plaintiff's lost wages." (Doc. 9 at 11). Perhaps so, but the defendants, despite opportunity and encouragement to do so, have furnished the Court no

7

non-speculative means of estimating the amount, or even the order of magnitude, of such damages.[4]

For the reasons set forth above and in its previous order, the Court is unable to find by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. Accordingly, this action is **remanded** to the Circuit Court of Mobile County for lack of subject matter jurisdiction.

DONE and ORDERED this 20th day of December, 2024.

                                      s/ WILLIAM H. STEELE
                                      UNITED STATES DISTRICT JUDGE

---

[4] The defendants suggest that, because the plaintiff was participating (at unknown frequency) in physical therapy eight months after the incident, he must have lost wages for that entire period. (Doc. 9 at 7). This is hopeless speculation, as persons routinely work while still engaged in physical therapy.